## LEVY v. TEXLITE ELECTRIC SIGN CO., Inc.

### No. 14145.

Court of Appeal of Louisiana. Orleans.

March 13, 1933.

On Motion to Correct Decree March 27, 1933.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellant.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by an electrical contractor against the manufacturer of electric signs for compensation for services in connection with the erection of signs in the city of New Orleans. The defendant, Texlite Electric Sign Company, Inc., of Dallas, Tex., engaged the plaintiff, Oscar Z. Levy, to erect several signs concerning only one of which is there now any dispute, for since the filing of the suit it has been admitted by both parties that plaintiff is entitled to the sum of $153 for his services in connection with the erection of all signs except that known as the "Tudor sign." This sign had been sold to the proprietors of the Tudor Theater for the sum of $1,883.20 which included the cost of erection in front of the Tudor Theater in the city of New Orleans. The sign was shipped here and a contract entered into with the plaintiff, Levy, for its erection for the sum of $550. This contract stipulated that the sign was to hang four feet from the building in conformity with the blueprint which was attached to the contract. The contract was executed on December 3, 1929, and on December 9, 1929, Levy received a telegram from the defendant reading as follows: "Mr. Light of Saenger Theatres wants Tudor sign to hang out additional six feet and has obtained special permission from City to do so stop Wire your additional charge for hanging out sign additional six

feet. We will furnish all necessary additional hanging equipment stop Consult Mr. Light." In reply to this telegram Levy called the general manager of defendant in Dallas on the telephone and suggested that it would be advantageous to purchase the extra hanging material in New Orleans instead of having it shipped from Dallas, and agreed that he would supply it and perform the extra work in connection with the altered plans for an additional $100 or a total of $650 for the entire job. Another blueprint was sent to Levy which was the same as the first one attached to the contract except that it provided for the hanging of the sign six feet further from the face of the building. It developed that the method of hanging the sign, in accordance with the revised plans, did not receive the approval of the city authorities who insisted that greater security should be had and, accordingly, it was necessary that, instead of anchoring the sign to the parapet wall as had been contemplated, it had to be secured by a cantilever construction on the roof of the building.

■ Levy contends that the cantilever method of construction had the effect of changing his contractual relation with defendant into a cost-plus arrangement covering the entire job of erecting the sign and that the defendant assented to this change in a long-distance telephone conversation which was subsequently confirmed by a letter dated December 28, 1929, with the result that the charge for erecting the sign which had been sold for $1,883.20, including the cost of installation, amounted to $1,766.41, which sum is claimed in this suit for the erection of the Tudor sign. We cannot credit plaintiff's contention in this regard and find it impossible to believe that any manufacturer would assent to such a proposition. We believe, however, that Levy was put to some additional expense not contemplated by his agreement, and this fact seems to have been realized by defendant, for they have offered testimony to show that the increased cost of installing the sign, as finally demanded by the agent of the purchaser, was from $100 to $175 over and above the cost of the revised plans of erection. Giving plaintiff the benefit of the higher amount, we find that he should receive additional compensation in the sum of $175, which should be added to the $650, making a total of $825, and from which should be subtracted $600, the amount paid on account, leaving a net balance due plaintiff on this account of $225, which, together with $153 admitted to be due, amounts to $378.

■ Defendant has filed a reconventional demand in the sum of $175.07; $10 of this amount is for a "flasher box" which, according to the testimony, was shipped to Levy but not used by him. This claim will not be allowed. The remainder of the claim in reconvention is made up of the expenses of two representatives of the defendant company who came to New Orleans for the purpose of straightening the sign after it had been erected and discovered to be four inches out of plumb. One of these representatives, Mr. Slocum, admitted that there was nothing unusual about signs being out of plumb and there is nothing to show that Levy could not have accomplished what these representatives did, and since they were sent here over Levy's objection and without any putting in default we have concluded not to allow this claim.

For the reasons assigned the judgment appealed from is amended by reducing the amount allowed plaintiff from $1,319.41 to $378, and as thus amended it is affirmed. Costs of this court to be paid by appellee; costs of lower court to be paid by appellant.

Amended and affirmed.

### On Motion to Correct Decree.

PER CURIAM.

Our former decree is amended by reducing the amount awarded plaintiff by the sum of $100, as the amount awarded in our original opinion was the result of a miscalculation to that extent.